RODERICK DEWAYNE BIBBS,      )
                              )
       Movant,             )
                              )
       v.                    )           No. 4:04-CV-1077 CAS
                              )
UNITED STATES OF AMERICA,     )
                              )
       Respondent.      )

## MEMORANDUM AND ORDER

This matter is before the Court on federal prisoner Roderick Dewayne Bibbs' motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. The government has filed a response to the motion to vacate and the movant has filed a reply. For the reasons discussed below, the Court concludes that all of the grounds asserted by movant are without merit.

**Background**.

On July 10, 2003, Bibbs and ten co-defendants were indicted on one count of conspiracy to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I), and one count of forfeiture under 21 U.S.C. § 853 (Count II). [Doc. 1] On August 24, 2003, a superseding indictment charged Bibbs and the ten co-defendants with one count of conspiracy to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I), and one count of forfeiture under 21 U.S.C. § 853 (Count II). [Doc. 161]

On August 28, 2003, movant appeared with his attorney and entered a plea of guilty after waiving the formal reading of the indictment. (Plea Tr. at 2). Movant entered a Plea Agreement, Guidelines Recommendations and Stipulations (the "Plea Agreement") [Doc. 215] with the

government at the time of his plea, which was filed with the Court the same day. Under the Plea Agreement, movant agreed to plead guilty to Count I in exchange for the government's agreement to dismiss Count II and to refrain from seeking enhancement of the punishment based upon prior convictions pursuant to 21 U.S.C. § 851. Count II was dismissed on the government's motion. The Plea Agreement stated that the maximum possible penalty for Count I was imprisonment of not less than ten (10) years and not more than life, a fine of up to four million dollars, a mandatory supervised release period of at least five (5) years, and a $100 special assessment. At the plea hearing, movant stated under oath that he understood the charge against him and the range of punishment. (Plea Tr. at 4).

Under the terms of the Plea Agreement and at the hearing on movant's change of plea, movant agreed that by entering a plea of guilty, he expressly waived his right to trial. At the plea hearing, movant stated under oath that he understood the various rights connected with the right to jury trial and the consequences of his waiver of those rights. (Plea Tr. at 7). In the Plea Agreement, movant agreed that he understood his rights not to plead guilty to the charges, to be tried by a jury, to file pretrial motions, to the presumption of innocence, to require the government to prove the entire case against him beyond a reasonable doubt, also the rights not to testify, not to present any evidence, to be protected from compelled self-incrimination, to confront and cross-examine adverse witnesses, and to compel the attendance of witnesses. Movant agreed that he understood by entering a guilty plea, he expressly waived all of the foregoing rights. (Plea Agreement at 28). The Plea Agreement also states that "defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial

will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence." (Plea Agreement at 28).

The Plea Agreement states that movant was fully satisfied with the representation he received from his attorney, and that movant had reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. (Id.) The Plea Agreement also states that defense counsel had completely and satisfactorily explored all areas defendant has requested relative to the government's case and any defenses. (Id.)

Movant waived his right to file an appeal with respect to non-jurisdictional issues. (Plea Agreement at 2). Movant also waived all rights to contest the conviction or sentence in any post-conviction proceeding, except for claims of prosecutorial misconduct or ineffective assistance of counsel. (Id. at 3). On December 18, 2003, the Court sentenced movant to a term of 151 months imprisonment, followed by five (5) years supervised release. No direct appeal was filed.

In the § 2255 motion now before the Court, as supplemented on December 6, 2004 [Doc. 10], Bibbs asserts three claims: (1) ineffective assistance of plea counsel; (2) violations of Rule 11, Federal Rules of Criminal Procedure; and (3) violation of movant's Fifth and Sixth Amendment due process rights to have a jury determine the issue of drug quantity. The Court will address each claim in turn.

**Legal Standard**.

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255, the errors of which the movant complains must amount to a fundamental miscarriage of justice. Davis

v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). The Supreme Court has stated that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). "[N]ormally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief." Poor Thunder v. United States, 810 F.2d 817, 823 (8th Cir. 1987) (citing Kaufman v. United States, 394 U.S. 217 (1969)).

The Court concludes that the instant motion under § 2255 can be determined based on the motion, files and records in the case, which conclusively show that movant is not entitled to relief. Therefore, movant's request for an evidentiary hearing will be denied. See United States v. Regenos, 405 F.3d 691, 694 (8th Cir. 2005).

**Discussion.**

It is well established that entry of an unconditional guilty plea waives all challenges to the prosecution of a criminal case, except for those related to jurisdiction. See United States v. Winheim, 143 F.3d 1116, 1117 (8th Cir. 1998); Smith v. United States, 876 F.2d 655, 657 (8th Cir.), cert. denied, 493 U.S. 869 (1989). Collateral review of a guilty plea is therefore "ordinarily confined to whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569 (1989).

A defendant may affirmatively waive particular constitutional rights. See Boykin v. Alabama, 395 U.S. 238, 243 (1969) (right to a jury trial, to confront and cross-examine witnesses, and to the Fifth Amendment privilege against self-incrimination); Faretta v. California, 422 U.S. 806, 836 (1975) (right to counsel). There is no constitutional right to appeal, as the right to appeal is purely a creature of statute. Abney v. United States, 431 U.S. 651, 656 (1977). Because defendants can waive

4

fundamental constitutional rights, they are not precluded from waiving procedural rights granted by statute, such as the right to appeal. United States v. Rutan, 956 F.2d 827, 829 (8th Cir. 1992), overruled in part by United States v. Andis, 333 F.3d 886, 892 n.6 (8th Cir. 2003) (en banc).

Agreements by criminal defendants to waive appellate rights and the right to pursue post-conviction relief have been upheld by the Eighth Circuit. See United States v. Morrison, 171 F.3d 567, 568 (8th Cir. 1999); United States v. Michelsen, 141 F.3d 867, 873 (8th Cir. 1998); United States v. His Law, 85 F.3d 379, 379 (8th Cir. 1996); Rutan, 956 F.2d at 829. In DeRoo v. United States, the Eighth Circuit stated, "As a general rule, we see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement context." 223 F.3d 919, 923 (8th Cir. 2000). "The 'chief virtues' of a plea agreement are speed, economy, and finality," id. at 923, which are "promoted by waivers of collateral appeal rights as much as by waivers of direct appeal rights." Id. "Waivers preserve the finality of judgments and sentences, and are of value to the accused to gain concessions from the government." Id.

Such waivers are not absolute, however. Defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of an agreement. DeRoo, 223 F.3d at 923. In addition, "the decision to be bound by the provisions of the plea agreement, including the waiver provisions, must be knowing and voluntary." Id. (citing Morrison, 171 F.3d at 568). "A decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside 'the range of competence demanded of attorneys in criminal cases.'" Id. (quoting Hill v. Lockhart, 474 U.S. 52, 56 (1985)).

**A. Ineffective Assistance of Counsel**

Bibbs' first claim is that he received ineffective assistance of plea counsel in the following eight respects:[1]

> A. Counsel failed to advise petitioner of the relevant law in relation to the facts of the case.
> B. Counsel failed to subject the government theories to an adversarial challenge.
> C. Counsel failed to obtain any exculpatory evidence.
> D. Counsel failed to interview government witnesses.
> E. Counsel refused to investigate the actual facts of the case.
> F. Counsel refused to present any mitigation evidence at sentencing.
> G. Counsel failed to insure during plea negotiations that the plea agreement had an adequate factual basis.
> H. Counsel refused to interview and investigate potential defense witnesses.
> I. Counsel refused to interview and investigate potentital [sic] defense witnesses.

(Supplemental Mot. to Vacate at 4-5).

To establish a showing of ineffective assistance of counsel, a movant must demonstrate that: (1) counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) counsel's deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The <u>Strickland</u> standard applies to guilty plea challenges premised upon allegations of ineffective assistance of counsel. <u>Hill v. Lockhart</u>, 474 U.S. at 58.

To establish ineffective assistance of counsel, under the first prong a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. When evaluating counsel's performance, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. Even if sufficient proof of the first prong exists, relief is warranted only if

---

[1]Bibbs' eighth and ninth points are the same.

6

a movant also establishes that counsel's deficient performance prejudiced the case. Id. at 697. To satisfy the second prong's "prejudice" requirement, the movant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. A court may address the two prongs in any order, and if the movant fails to make a sufficient showing of one prong, the court need not address the other prong. Strickland, 466 U.S. at 697; Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000).

**I.**

Bibbs' primary assertion of ineffective assistance of counsel is that his plea counsel, Deborah K. Van Arink, did not explain to him the elements of the crime of conspiracy that the government would have had to establish beyond a reasonable doubt. Bibbs asserts that plea counsel erroneously informed him that Bibbs' admitted agreement to purchase narcotics in and of itself constituted an agreement to distribute narcotics. In addition, Bibbs claims that he never admitted to anything other than purchasing $110,000 worth of cocaine.

Bibbs does not dispute that he entered into a written Plea Agreement with the government. Despite the contents of that Agreement, Bibbs denies that he ever admitted to having conspired to distribute cocaine. On August 28, 2003, Bibbs appeared before the Court, represented by counsel, and indicated a desire to enter a guilty plea. First, the Court stated that it would "need to inquire whether or not Mr. Bibbs is familiar with the charges and whether or not he wishes the indictment to be read." (Plea Tr. at 2, ll. 9-10). Bibbs agreed with his counsel that he was familiar with the charge, and would waive formal reading of the indictment. (Id., l. 18). Bibbs did not ask any questions of the Court or counsel, and never indicated that he did not understand the nature of the charge against him.

After Bibbs took an oath to tell the truth, he was asked several questions, the purpose of which were to establish the voluntariness of his plea. Specifically, Bibbs was asked his age, the extent of his education, whether he was under the influence of alcohol or any drug, and whether he suffered from any mental disease or defect. (Id. at 3-4). Bibbs gave appropriate responses to all the questions asked of him. (Plea Tr. at 3-4). The Court then asked the government's representative, Assistant United States Attorney John T. Davis, to indicate for the record the charge against Bibbs and the range of punishment. Mr. Davis stated,

> Your Honor, the charge in Court I with which Mr. Bibbs is charged is violation of Title 21, United States Code, Section 841(a)(1), that being *conspiracy to distribute in excess of five kilograms of cocaine.* The range of punishment for such an offense is incarceration not less than ten years, not more than life, a fine of up to $4 million, or both, a mandatory period of supervised release of at least five years up to life and an $100 special assessment. This charge does carry a ten-year mandatory minimum prison sentence.

(Plea Tr. at 4, ll. 10-19) (emphasis added). Immediately after Mr. Davis had finished his recitation of the charge and punishment, the Court asked Mr. Bibbs, "You understand that, Mr. Bibbs?" (Id., l. 20). Bibbs responded in the affirmative, stating, "Yes, sir." (Id., l. 21).

It is clear that Bibbs was properly advised of both the charge against him and the possible penalties associated with that charge. Bibbs stated under oath that he understood the charge and the penalty. "Such statements at the plea hearing provide persuasive evidence of an understanding." Harvey v. United States, 850 F.2d 388, 396 (8th Cir. 1988). Bibbs did not at any time express any disagreement with the statement of the charge, or request further clarification or information. Bibbs never indicated that he was unwilling to plead guilty to a conspiracy charge, and never claimed that he was guilty only of purchasing narcotics. Therefore, Bibbs' claim that "he was not responsible for conspiring to distribute, nor did he admit to conspiring to distribute more than five (5) kilograms,"

8

(Suppl. Mot. to Vacate at 13), is without support in the record.  The record reveals that Bibbs was

properly advised that in pleading guilty, he would be admitting that he conspired to distribute cocaine

in an amount greater than five kilograms.

Bibbs also claims that he "did not admit to any thing [sic] other than : 1.] paying $110,000

for cocaine, and 2.] owing $85,000 for an undetermined portion of ten (10) kilograms."  (Suppl. Mot.

to Vacate at 9).  Again, the record contradicts Bibbs' claim.  During the change of plea proceedings,

the Court requested that Mr. Davis provide a recitation of what the government's evidence would

have been at trial.  Mr. Davis complied with the Court's request, stating in relevant part:

> During proffer interviews with [co-defendant] Demetri Bibbs, Demetri stated that in March of 2003 he had been fronted 12 kilograms of cocaine by [co-defendant] Jose Soto and that of those 12 kilograms, 10 of them were fronted by Demetri to Roderick Bibbs, this defendant.
>
> Demetri advised agents that Roderick had previously paid $110,00 for the fronted cocaine, but Demetri was of the belief that Roderick was currently avoiding payment of the remaining $85,000.  Based on that, on July 2nd of 2003 a Hispanic special agent of the FBI posed as a member of the *Chicago cocaine distribution network* working with Jose Soto.  The agent approached the residence of Roderick Bibbs's mother and asked if Roderick was there.  He was advised that he was not there.  And the agent asked if Roderick would get in touch with him as soon as possible.
>
> Shortly after that Roderick Bibbs contacted Demetri Bibbs and arranged a meeting at the International House of Pancakes.  During this meeting the meeting was surveilled by the FBI, videotaped and audiotaped as well while Demetri Bibbs was wearing a recording wire.  According to Mr. Demetri Bibbs during this brief meeting the two Bibbs discussed the outstanding drug debt owed and the visit to Roderick's mother's residence by a Hispanic male that Roderick believed to be an associate of Jose Soto.
>
> During this meeting Roderick told Demetri that he was not avoiding the debt he owed and indicated that he wished to speak to the Hispanic male in person.  . . . On July 10th of 2003 a meeting between the undercover Hispanic FBI agent and Roderick Bibbs occurred at a Red Lobster restaurant in St. Louis.  The agent recorded that meeting using a concealed recording and transmitting device.  And

during this meeting Mr. Roderick Bibbs discussed the debt owed *and the possibility of acquiring additional cocaine from Chicago.*

Following this undercover meeting which occurred at the Red Lobster, Roderick Bibbs and co-defendant Terrance Fuller were surveilled together by agents at a shopping plaza in the 11000 block of New Halls Ferry Road where agents observed Fuller and *Bibbs carrying boxes into one of the stores in the plaza.* Mr. Fuller and Mr. Bibbs were arrested at that plaza and a search of one of the retail establishments there called Just Jerseys 2 resulted in the *seizure of two kilos of cocaine* and a firearm that was in an electrical box hanging on the wall in that shop.

(Plea Tr. at 5-6) (emphasis added).

After Mr. Davis had completed this recitation of facts the Court asked Bibbs, "Is that what happened, Mr. Bibbs?" (Id. at 7, l. 1). Bibbs answered in the affirmative, stating, "Yes, sir." (Id., l. 2). Despite this invitation to dispute the facts as presented by the government, Bibbs did not express any disagreement with the facts as set forth by Mr. Davis. Bibbs did not deny that he had been fronted ten kilos of cocaine by his co-defendant Demetri Bibbs, and did not deny that he had paid a large amount of money for the cocaine. Bibbs did not dispute that he believed the Hispanic FBI agent with whom he met was an associate of co-defendant Jose Soto and a member of a cocaine distribution network based in Chicago. Bibbs also agreed that he had asked about acquiring additional quantities of cocaine from the person he believed to be Jose Soto's associate. Finally, Bibbs did not deny that he was arrested on July 10, 2003 after being observed delivering boxes into the back of a retail store, which boxes were subsequently discovered to contain two kilos of cocaine.

Bibbs was advised that the charge to which he intended to plead guilty was a conspiracy to distribute in excess of 5 kilos of cocaine, and Bibbs expressed his understanding of that charge. Bibbs did not claim (as he now does) that he did not enter into a conspiracy and did not intend to distribute

any cocaine. To the contrary, each time Bibbs was asked whether he agreed with the government's explanation of his conduct, he answered in the affirmative.

Despite this evidence in the record, Bibbs claims that his guilty plea was involuntary because of the ineffective assistance of his counsel. Bibbs alleges that his counsel was constitutionally ineffective for, among other things, giving him incorrect legal advice regarding the definition and requirements of a conspiracy. Bibbs asserts that counsel "provided petitioner with false information, which rused [sic] him to plead guilty to **conspiracy to distribute narcotics**, for which he is 'actually innocent' of." (Suppl. Mot. to Vacate at 6) (emphasis in original). According to movant, applying the correct legal definition of conspiracy, he "**was not** guilty of **distributing narcotics as charged**." (Suppl. Mot. to Vacate at 5) (emphasis in original). In support of this argument, Bibbs claims that the told his counsel that "at no time had he ever 'fronted' narcotics to anyone, nor did he **distribute any narcotics**, nor had petitioner ever **agreed** (the actus reus) to **distribute** narcotics with anyone." (Id.) (emphasis in original). Similarly, Bibbs asserts that there "**did not** exist any proof of him factually **distributing** any narcotics as charged in the indictment." (Id.) (emphasis in original).

Bibbs' claims fail. Initially, Bibbs begins with the faulty premise that he was charged with distributing narcotics. Bibbs was charged with conspiring to distribute narcotics under 21 U.S.C. §841 and §846. Whether or not Bibbs actually distributed narcotics, or even attempted to distribute narcotics, is of no consequence for purposes of his plea. See United States v. Covos, 872 F.2d 805, 809-810 (8th Cir.), cert. denied, 493 U.S. 840 (1989) ("Section 846 does not require proof of an overt act in furtherance of the conspiracy."). Whether or not Bibbs ever "fronted" narcotics to anyone is similarly irrelevant.

Moreover, if the issue of whether Bibbs actually distributed cocaine was relevant, the facts as recited during the change of plea hearing demonstrate conclusively that Bibbs did, in fact, distribute cocaine. Bibbs did not dispute that he delivered boxes into the Just Jerseys 2 store, and that those boxes were subsequently discovered to contain cocaine. In delivering the boxes of cocaine to the store, Bibbs "distributed" cocaine as defined in 21 U.S.C. §802(11). In addition, as discussed more fully below, intent to distribute "may be inferred solely from the possession of a large quantity of drugs." United States v. Brett, 872 F.2d 1365, 1370 (8th Cir. 1989) (citations omitted).

Bibbs asserts that had he been properly informed as to the government's burden with respect to proving a conspiracy, "There existed a reasonable probability, that petitioner would not have entered into a plea. Had he known and been correctly advised as to what 'elements' facutally [sic] and lawfully constituted: 1. a conspiracy, and 2.] distribution and what **did not.** Petitioner would have insisted on going to trial." (Suppl. Mot. to Vacate at 7) (emphasis in original).

As stated above, "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. at 52. Thus, errors by Bibbs' counsel must have been so serious that she was not functioning as the counsel guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. There exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Counsel's challenged conduct is to be evaluated in light of the circumstances surrounding the decision, not with 20/20 hindsight vision. Id. at 689. The scope of counsel's duty to investigate depends upon the strength of the government's case. Id. at 680. The probative value of the proffered evidence should also be considered. Davis v. United States, 865 F.2d 164, 169 (8th Cir. 1988). A failure to conduct substantial investigation into every plausible line of defense does not render assistance ineffective. Id.

To establish prejudice, the second element of a successful ineffective assistance of counsel claim under the Sixth Amendment, Bibbs must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. In the context of a plea, the prejudice requirement is met only if a movant establishes a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 59. Although Bibbs has asserted that, but for his counsel's erroneous advice, he would not have entered the guilty plea, this mere claim is insufficient to establish the reasonable probability. In Hill, the Supreme Court provided an illustration of the type of analysis to be conducted:

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

Hill, 474 U.S. at 59 (internal citations omitted). The Supreme Court also noted that "these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" Id. at 60. In the context of the instant case, this Court must determine whether, assuming Bibbs had been properly counseled as to the government's burden with respect to the conspiracy charge, there is a reasonable probability that he would have elected not to plead guilty.

It is well settled that "to convict [a defendant] of conspiracy under 21 U.S.C. §846, the government had to prove that he entered into an agreement with at least one other person and that the agreement had as its objective a violation of the law." United States v. Maejia, 928 F.2d 810, 813 (8th Cir. 1991) (citing Henderson v. United States, 815 F. 2d 1189, 1191 (8th Cir. 1987)). During the change of plea hearing in the instant case, Bibbs acknowledged having entered into a conspiracy, and admitted sufficient facts upon which a jury could have found him guilty. First, Bibbs acknowledged that he had purchased at least ten kilograms of cocaine from co-defendant Demetri Bibbs. (Plea Tr. at 5, ll. 5-8; id. at 7, ll. 1-2). Second, Bibbs admitted that he later met with a person he believed to be an associate of Chicago cocaine dealer Jose Soto, and inquired about obtaining additional cocaine. (Plea Tr. at 6, ll. 7-13; id. at 7, ll. 1-2).

"'[T]he nature of the offense of conspiracy with its necessary aspect of secrecy often requires that the agreement be implied from the surrounding circumstances.'" Maejia, 928 F. 2d at 813 (quoting United States v. Gooden, 892 F. 2d 725, 729 (8th Cir. 1989), cert. denied, 496 U.S. 908 (1990)). In this case, there was circumstantial and direct evidence of the conspiracy. During interviews, Demetri Bibbs acknowledged fronting ten kilograms of cocaine to movant Bibbs, in exchange for which movant agreed to pay $110,000.00. The July 10, 2003 meeting between movant and the undercover FBI agent posing as an associate of Jose Soto's was audio recorded. During that meeting, movant inquired about obtaining additional cocaine. This is ample evidence upon which a jury could have found that movant had entered into an agreement with Demetri Bibbs and others, the purpose of which was a violation of the law. Under these circumstances, it is difficult to conclude that movant would ever have elected to proceed to trial. Therefore, he has suffered no prejudice.

The Court also notes that the government has submitted the affidavit of Ms. Van Arink, defendant's plea counsel, which refutes Bibbs' assertion that he did not understand and was not informed of the elements of the charges against him. Ms. Van Arink avers, in pertinent part,

> From the outset, I explained the elements of a conspiracy charge with Bibbs. We discussed facts and the evidence required to prove the elements of a conspiracy including but not limited to the following: Requirements of an agreement, knowing participation, knowledge of a connection to a conspiracy, and obtaining benefits from the success of a drug venture. We also explored and discussed facts that might counter or create doubt that Bibbs was a co-conspirator.

Van Arink Aff. at 1, ¶ 5 [Doc. 15, ex. 1]. Although Bibbs challenges Ms. Van Arink's affidavit as "fraudulent" in his reply memorandum [Doc. 16], the reply was not signed under penalty of perjury, and therefore the Court does not consider it as a counter-affidavit.

Bibbs also claims that he has suffered prejudice because he never distributed cocaine, and did not intend to do so. Bibbs argues that his attorney was ineffective because she counseled him to plead guilty even though he told her he did not intend to distribute the cocaine. Under the law, however, "The intent to distribute may be proven by either direct or circumstantial evidence and may be inferred from such things as the possession of a large quantity of a controlled substance, its high purity level, the presence of paraphernalia used to aid in the distribution of drugs, large sums of unexplained cash, and the presence of firearms." United States v. Shurn, 849 F. 2d 1090, 1093 (8th Cir. 1988). "Moreover, we recognize that 'intent to distribute may be inferred solely from the possession of large quantities of narcotics.'" United States v. Lopez, 42 F. 3d 463, 466 (8th Cir. 1994) (quoting United States v. Ojeda, 23 F.3d 1473, 1476 (8th Cir. 1994)). In the instant case, Bibbs acknowledged having purchased ten kilograms of cocaine from his co-defendant, Demetri Bibbs. This is clearly a sufficient quantity of cocaine to form an inference that Bibbs intended to

distribute it.  See, e.g., United States v. Johnson, 18 F.3d 641, 647 n.13 (8th Cir. 1994) (three kilograms of cocaine was a sufficient quantity to establish that defendant intended to distribute it). Bibbs further acknowledged attempting to secure additional quantities of cocaine.  Certainly, cocaine in these amounts would have provided more than ample evidence for a jury to find that Bibbs possessed the drugs with the intent to distribute them.  In addition, Ms. Van Arink's affidavit states in pertinent part that Bibbs gave her the names of the persons to whom he distributed the ten kilograms of cocaine, and the amounts of cocaine given or sold to each.  Van Arink Aff. at 2, ¶ 9.

It is clear that under the facts as admitted by Bibbs during his change of plea hearing, defense counsel did not provide Bibbs with ineffective assistance.  To the contrary, as a result of counsel's advice, Bibbs pleaded guilty to a conspiracy involving in excess of 5 kilograms of cocaine, although the government had initially indicated its intent to prove that the conspiracy actually involved 15 to 50 kilograms of cocaine. (See Plea Agreement at 5, ¶ 3(B)(1)).  Had Bibbs gone to trial and been convicted with respect to the additional amounts, he would have faced not only an increased Base Offense Level, but also the loss of the three-step reduction for acceptance of responsibility.  Further, according to the Presentence Investigation Report [Doc. 358], if movant had been charged as having prior felony drug convictions, he would have been subject to a mandatory term of life imprisonment, without release, and a maximum fine of $8,000,000.

In short, to the extent that Bibbs exerts a generalized claim of ineffective assistance in counsel's advice that he plead guilty, the record refutes any such claim.  Bibbs received effective assistance in connection with his plea, and reaped substantial benefits from it.  There is also no indication that movant suffered prejudice, particularly in light of the facts as admitted during the change of plea hearing.

## II.

As stated above at page 6, Bibbs also asserts that his counsel was ineffective in several other respects, specifically by failing to subject the government's theories to an adversarial challenge; to obtain any exculpatory evidence; to interview government witnesses; to investigate the actual facts of the case; to present any mitigation evidence at sentencing; to insure during plea negotiations that the plea agreement had an adequate factual basis; and to interview and investigate potential defense witnesses. Some of these points are without merit based on the discussion in section A.I., supra, such as counsel's alleged failure to insure that the plea agreement had an adequate factual basis and failure to subject the government's theories to adversarial challenge.

"[F]ailing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel." Kramer v. Kemna, 21 F.3d 305, 309 (8th Cir. 1994). This does not automatically lead to a conclusion that counsel was ineffective, however, because even if the Court were to assume that counsel's failure to interview witnesses or discovery mitigating evidence did not meet an objective standard of conduct, Bibbs still needs to "make a substantial showing that, but for counsel's failure to interview . . . the witnesses in question, there is a reasonable probability that the result of his trial would have been different." Id.

Bibbs has not made the substantial showing required of him in this case. With respect to his remaining claims of ineffective assistance, movant does not assert any facts to support his generalized assertions. For example, movant does not assert what the exculpatory evidence was that counsel failed to develop, which government witnesses should have been interviewed and what favorable evidence would have been gained from the interviews; what mitigation evidence existed that was not presented, or the names of potential defense witnesses and the nature of the testimony they would

have given if called to testify. Movant's remaining claims of ineffective assistance therefore constitute unsupported speculation. See, e.g., United States v. Vazquez-Garcia, 211 F. App'x 544, *2 (8th Cir. Jan. 9, 2007) (unpublished per curiam) (rejecting claim of ineffective assistance of counsel under § 2255 based on failure to interview a witness, where the movant did not provide any independent evidence concerning what the witness would have said had been interviewed or called to testify).

As stated above, to satisfy the "prejudice" requirement of the second prong of the Strickland test, the movant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The Court declines to find prejudice in this situation when there is no evidence to support the finding. Because Bibbs cannot satisfy both requirements under the Strickland analysis, he cannot succeed on his claims of ineffective assistance of counsel.

**B. Rule 11 Claims**.

Bibbs' second claim is that he should be permitted to withdraw his guilty plea because the Court failed to comply with the requirements of Rule 11 of the Federal Rules of Criminal Procedure in two respects: insufficient factual basis for a guilty plea, and failure to inform Bibbs of the nature of the conspiracy to distribute charge.[2]

Bibbs did not raise his Rule 11 claim on direct appeal, and he makes no attempt to assert cause and prejudice for this procedural default. "Ordinarily, a section 2255 motion 'may not do

---

[2]The text of Rule 11(b)(1)(G) states: "Before the Court accepts a plea of guilty . . . the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading." Rule 11(b)(3) states: "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."

service for an appeal.'" Rogers v. United States, 1 F.3d 697, 699 (8th Cir. 1993) (per curiam) (quoted cases omitted). Because the government did not raise the issue of procedural default, however, the Court will consider the merit of the claims. See id.

"Violations of Rule 11 are cognizable in section 2255 motions only if they create a (1) an error which is jurisdictional or constitutional; (2) a defect which results in a miscarriage of justice; (3) an omission inconsistent with the rudimentary demands of fair procedure; or (4) extraordinary circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Rogers, 1 F.3d at 699 (internal punctuation and quoted cases omitted); see United States v. Timmreck, 441 U.S. 780, 784 (1979).

Applying this standard, the Court finds that Bibbs is not entitled to relief on his Rule 11 claims. First, Bibbs claims that "there exists no evidence to establish petitioner's involvement with conspiring to distribute." (Suppl. Mot. to Vacate at 8). Bibbs also claims that the factual basis for the conspiracy was never read into the record, and that he did not admit to the elements of conspiring to distribute as charged in Count I. (Id. at 9). With respect to this claim, there was ample evidence to establish Bibbs' involvement in the conspiracy as discussed in section A.I, supra. The facts as set forth in the record by the Assistant United States Attorney and admitted by Bibbs provide adequate evidence upon which a jury could have based a verdict of guilty, and therefore a factual basis for the plea existed.

Bibbs' second claim, that he should be permitted to withdraw his plea because he did not understand the nature of the charges against him, also fails. Bibbs waived the reading of the indictment, but was read the charge and the penalty. Bibbs, who completed high school and has one year of college education, admitted that he understood both. Bibbs heard the government's

description of the facts constituting the conspiracy to distribute and admitted that this description reflected what happened. (Plea Tr. at 6-7). The government's recitation of the charge and description of the facts of the case sufficiently informed Bibbs of the nature of the charges against him, in light of Bibbs' testimony that he understood the charges and that the facts as alleged were true.

Cases have held that a conspiracy charge under 21 U.S.C. § 846 is simple enough for a "lay person" to understand, and that a court's recitation of the indictment and inquiry as to whether the defendant understands the charge, together with the government's reading of the facts constituting the conspiracy, is sufficient to comply with Rule 11. See United States v. Edgecomb, 910 F.2d 1309, 1313 (6th Cir. 1990); see also United States v. Abdullah, 947 F.2d 306 (8th Cir. 1991) (court's reading to defendant indictment charging defendant with conspiracy under section 846, combined with court's response to defendant's questions about the charge (in which the court explained the nature of a conspiratorial agreement), was sufficient to ensure that defendant was fully informed of the conspiracy charge against him); United States v. Musa, 946 F.2d 1297, 1305 (7th Cir. 1991) (rejecting argument that section 846 conspiracy is not easily understood; the prosecution's proffer of the facts and the court's colloquy, in which defendant admitted he engaged in drug transactions with two coconspirators, established understanding); United States v. Tobon-Hernandez, 845 F.2d 277, 279 (11th Cir. 1988) (court's Rule 11 inquiry was "thorough" when it informed defendant that charges against him were limited to a section 846 conspiracy count and a cocaine possession count); United States v. Carter, 815 F.2d 827, 829 (1st Cir. 1987) (charges of conspiracy with intent to distribute marijuana were "simple enough that a man with a high school education who says that he understands them should be believed.")

Further, Bibbs has not asserted that he would not have pleaded guilty had he been provided with an adequate explanation of the nature of the charges against him. As a result, he cannot establish that he was prejudiced by the alleged violation of Rule 11, and relief under § 2255 is inappropriate. See Rogers, 1 F.3d at 699-700 (where movant did not allege that he would not have pleaded guilty if he had been correctly informed regarding parole eligibility, even if Rule 11 was violated, post-conviction relief would not be appropriate because the violation was not causally connected to the plea and conviction). Rule 11 itself provides, "A variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h).

Bibbs also claims that he did not admit the quantity of drugs that he conspired to distribute. (Suppl. Mot. to Vacate at 9). Bibbs' claim is refuted by the record. When the Assistant United States Attorney read the charge into the record at the change of plea hearing, he specifically indicated that it was a "conspiracy to distribute in excess of five kilograms of cocaine." (Plea Tr. at 4). The Court asked Bibbs whether he understood, and Bibbs answered in the affirmative. Bibbs may not now claim that he did not admit to conspiring to distribute in excess of five kilograms of cocaine.

For these reasons, the Court finds that Bibbs' claims for relief under Rule 11 fail, as he has not established that the alleged violations of Rule 11 were jurisdictional or constitutional, caused a miscarriage of justice, violated the rudimentary demands of fair procedure, or were made in a case presenting exceptional circumstances that merit collateral relief. See Rogers, 1 F.3d at 699, 700.

## C.  Due Process -- Drug Quantity Determination.

Bibbs' final claim asserts that the Court violated his Fifth and Sixth Amendment due process rights by determining the amount of cocaine involved in the conspiracy, as movant was entitled to a jury determination of the quantity.  Bibbs relies on, inter alia, Blakely v. Washington, 542 U.S. 296 (2004).[3]

As a threshold matter, the rule announced in Blakely does not apply retroactively to cases on collateral review.  United States v. Stoltz, 149 F. App'x 567, 568-69 (8th Cir. Oct. 10, 2005) (unpublished per curiam); see United States v. Hernandez, 436 F.3d 851, 855 (8th Cir. 2006).

Bibbs' claim is without merit.  Bibbs admitted in the Plea Agreement that (1) the quantity of cocaine he was responsible for, including relevant conduct, was "more than 15 kilograms and less than 50 kilograms," (Plea Agreement at 5), (2) he had been fronted ten kilograms of cocaine by Demetri Bibbs in March 2003 (id. at 20), and (3) he took packages containing two kilograms of cocaine to the Just Jerseys 2 store in July 2003 (id. at 22).  Because Bibbs admitted the facts necessary to support the quantity finding, and agreed to the quantity finding as a specific term of the Plea Agreement, the Court did not err in making the finding.  See United States v. Parsons, 408 F.3d 519, 521 (8th Cir. 2005).

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that any factor, other than a prior conviction, which increases a criminal defendant's sentence beyond the

---

[3]Bibbs specifically requests "that this Honorable Court does not misconstrue his SIXTH Amendment "JURY" trial challenge as to being a challenge against the [United States Sentencing Guidelines], because petitioner's SIXTH Amendment JURY trial challenge bears no semblance or any relation to whether the U.S.S.G. are constitutional or not."  (Suppl. Mot. to Vacate at 15).  Thus, Bibbs did not raise an issue as addressed in the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005).

statutory maximum must be submitted to the jury and proved beyond a reasonable doubt.  In <u>Blakely</u>, 542 U.S. at 303, the Supreme Court clarified the <u>Apprendi</u> ruling, holding that the term "statutory maximum" in this context means "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."  The Supreme Court also explained that a defendant may waive his <u>Apprendi</u> rights:  "When a defendant pleads guilty, the [Government] is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." <u>Blakely</u>, 542 U.S. at 310.

In this case, the parties agreed that Bibbs was directly responsible for more than fifteen kilograms but less than fifty kilograms of cocaine.  Bibbs thus admitted the relevant facts regarding drug quantity, and there is no claim that his sentence exceeded the maximum authorized.  As a result, neither <u>Blakely</u> nor subsequent decisions, even if they applied retroactively, would render Bibbs' plea or sentence constitutionally infirm.  Finally, if there had been a Sixth Amendment violation, the remedy that Bibbs requests -- for a jury to determine the drug quantity -- is not the remedy for Sixth Amendment violations prescribed by the Supreme Court.  <u>See</u> <u>Parsons</u>, 408 F.3d at 521.

**<u>Conclusion</u>**.

For the foregoing reasons, the Court concludes that Bibbs' motion to vacate should be denied in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that Roderick Dewayne Bibbs' motion under 28 U.S.C. § 2255, as supplemented, is **DENIED**.  [Docs. 1, 10]

**IT IS FURTHER ORDERED** that movant's request for an evidentiary hearing is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Roderick Dewayne Bibbs has not made a substantial showing of the denial of a constitutional right, and therefore this Court will not issue a certificate of appealability.

An appropriate judgment will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this __30th__ day of August, 2007.